STATE OF CONNECTICUT *v.* JAMES DENEGRIS

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued June 1—decided June 28, 1965

*Alfonse C. Fasano,* for the appellant (defendant).

*George R. Tiernan,* state's attorney, for the appellee (state).

ALCORN, J. The defendant was convicted, in a trial to the court, of engaging in horse race betting activity in violation of § 53-295 of the General Statutes, third offense. He has appealed and has made fourteen assignments of error which raise three issues: (1) whether the search warrant under which the arresting officers entered his house was invalid because of the insufficiency of the affidavit on the basis of which the warrant was issued; (2) whether certain evidence was improperly admitted; and (3) whether, on all the evidence, his guilt was proved beyond a reasonable doubt. The assignments of error attacking the finding are without merit. Claims as to the accuracy of the court's rulings on motions to dismiss and to strike out are disposed of by the consideration of the three main issues.

We consider first the attack on the search warrant. The facts may be briefly summarized. On August 29, 1963, a major and a sergeant of the state police made affidavit before a judge of the Superior Court that they had received information from a person who had furnished reliable information in the past, and which had been completely substantiated by subsequent investigation, that a single-family, ranch-type house at 10 Bailey Drive in West Haven had been and was then being used to receive and disseminate

information in violation of the state gaming laws and contained slips, moneys, papers, paraphernalia, memoranda and telephones used in connection with the crimes of policy playing and pool selling; that investigation showed the house to be occupied by James DeNegris and his wife, Marie, both of whom are described in the same way and have the same birth dates as persons registered with the motor vehicles department under the names of James and Marie Carrano; that both James and Marie Carrano have police records for pool selling; that electric service to the house is billed to James Carrano; that two telephone service wires lead into the house and are connected to two unlisted telephones and to a third extension telephone. After reciting other observations made at the house, the affidavit concludes with an allegation of the existence of probable cause for the issuance of a search warrant for the property described. The judge of the Superior Court to whom the affidavit was presented found that the affiants had probable cause to believe that property used for the purpose of policy playing and pool selling was concealed in the house. He accordingly issued a search warrant on August 29, 1963.

The trial court concluded that the search warrant was valid, that the search and the seizure were legally carried out, and that the defendant was guilty as charged. The defendant gives five reasons for his claim that the affidavit was inadequate to support the issuance of the search warrant. The first is that it failed to state a date for the informant's observation. This claim is raised for the first time in the brief. We find no mention of it among the grounds specified in a motion to suppress made prior to the trial, in the objections to evidence offered at the trial, or in the claims of

law, and consequently we do not consider it. *State v. McLaughlin,* 132 Conn. 325, 339, 44 A.2d 116. The second claim is that the affiants did not assert a belief in the existence of probable cause for the issuance of the warrant. General Statutes § 54-33a. This claim not only was not raised at the trial but also is without merit inasmuch as the affidavit, by the language used, sufficiently asserted a belief in the existence of probable cause. The remaining three reasons assigned for the claimed insufficiency of the affidavit amount to the single proposition that it lacked allegations necessary to support a finding of probable cause by the judge who issued the warrant.

Both the fourth amendment to the constitution of the United States and § 8 of article first of the Connecticut constitution provide that no search warrant shall issue except upon probable cause supported by oath or affirmation. The protection afforded to the citizen by these constitutional provisions requires an impartial and deliberate determination of probable cause by the authority empowered to issue the warrant. *United States v. Ventresca,* 380 U.S. 102, 105, 85 S. Ct. 741, 13 L. Ed. 2d 684. The purpose served by the affidavit is to enable the issuing authority to weigh the persuasiveness of the facts relied upon by the affiant and, from them, to determine whether the necessary probable cause exists. *Giordenello v. United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503. Technical nicety of phrase is not required in the affidavit so long as the recital of the underlying circumstances permits the issuing authority to perform his independent function of determining the existence of probable cause. *United States v. Ventresca,* supra. The recital must be of facts so closely

related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *Sgro* v. *United States,* 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260. Because of the great difference which exists between a finding of guilt and a finding of probable cause, hearsay information from an informer may enter into the determination of probable cause so long as a substantial basis is shown for crediting the hearsay. *Jones* v. *United States,* 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697; *Draper* v. *United States,* 358 U.S. 307, 311, 79 S. Ct. 329, 3 L. Ed. 2d 327. The basic question presented by the attack made here on the validity of the search warrant, therefore, is whether the judge who issued it had, in the affidavit presented to him, a substantial basis for finding that probable cause existed for issuing the warrant, after considering the facts alleged, including those which tended to confirm the reliability of the hearsay information recited. See cases such as *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142; *Aguilar* v. *Texas,* 378 U.S. 108, 111, 84 S. Ct. 1509, 12 L. Ed. 2d 723. His conclusion that probable cause existed is to be sustained so long as there was a substantial basis for it. *Aguilar* v. *Texas,* supra.

The affidavit showed that the officers had information from an informer that the premises in question were then being used for gambling purposes. This information was considered reliable because the informer had furnished reliable information in the past. Upon independent investigation the officers had determined that the premises, a modest dwelling, was occupied by a man and his wife, both of whom appeared to be persons with police records for gambling, that two telephone service wires led into the house and that they were connected to two

unlisted telephones and to a third extension telephone. In the light of the other facts recited the judge was not required to close his eyes to the unusual circumstance of telephone service of the type described in an apparently modest dwelling. The judge had a substantial basis for finding probable cause for the issuance of the search warrant on the basis of the affidavit presented to him. *Jones* v. *United States,* supra; *Draper* v. *United States,* supra.

We turn now to the rulings on evidence and the claim that the evidence was insufficient to prove the defendant's guilt of the crime charged. Acting under authority of the search warrant, state police officers, on the day the warrant was issued, went to the defendant's house, knocked several times on the outer door, which was locked, announced themselves, and, on receiving no response and after a short wait, broke a glass in the locked door and entered the house. The defendant's wife, who was in the laundry room on the lower level, started to yell to attract the attention of the defendant, who was upstairs. A toilet was heard being flushed upstairs, and the defendant came out of the bathroom and down the stairs. The search warrant was shown to the defendant, he was searched, and $481 was found in his trouser pocket. The defendant stated that this money was from his business as a self-employed salesman. The house was searched and a scratch sheet known as the Armstrong Daily containing horse race information and a Boston Record American, both dated August 29, 1963, were found on a table. Four $100 bills, admittedly belonging to the defendant, were found hidden in a toy in a child's bedroom. An unnumbered telephone was found in a master bedroom, another unnum-

bered telephone in the first-floor playroom, and a third unnumbered telephone in the bedroom of the defendant's seven-year-old daughter. The officers had arrived at the house at about 12:30 p.m. The busy period for horse race gambling activity is from noon to 1:30 p.m., and one of the officers monitored one of the telephones beginning at about 1:15 p.m. A telephone call was received from a caller who hung up after stating to the officer: "You don't sound right." At 1:20 p.m. a call was received from a person who inquired whether there was any trouble there because the police were in town. Four minutes later the same person called again and said that "John had been picked up". A John DeMartin was arrested by other officers in East Haven that day. The officer asked the caller, identified as "George", if he had any bets, and "George" called off $94 in bets on horses running that day at Rockingham Park, New Hampshire, Aqueduct, New York, and Atlantic City, New Jersey. Some of the bets were of a type not taken at racetracks. The officer took other horse race bets for $10 from a caller who identified himself as "Bob from the Cut-Rate". The bets taken by the officers related to entries carried in the Armstrong Daily scratch sheet and the Boston Record American for race tracks at Rockingham Park, Aqueduct and Atlantic City. Most of the defendant's income in 1963 came from gambling and betting on sporting events. The defendant was arrested, and the officers, pursuant to the search warrant, seized the $881 in currency, the telephones, the Armstrong Daily and the Boston Record American found on the premises.

The defendant claims that all evidence as to what was found in the house, and as to what went on there, was inadmissible because of the illegality of

the search warrant. This claim is disposed of by what has already been said. He also claims that the telephone calls testified to by the officers were inadmissible hearsay. This claim can be briefly disposed of. The testimony concerning the telephone calls was offered, not to prove that the statements made in them were true, but as evidence of betting activity. Such evidence is admissible, not as an exception to the hearsay rule, but because it is not within that rule. *State* v. *Tolisano,* 136 Conn. 210, 214, 70 A.2d 118. The implication suggested by the defendant that the court failed to exercise proper caution in admitting the testimony is unwarranted in the light of the other evidence already admitted. There was no error in admitting the testimony concerning the telephone conversations.

The final issue is whether the court was justified in concluding, on all of the evidence, that the defendant was guilty of the crime charged beyond a reasonable doubt. The essential facts need not be repeated. The defendant and his wife each took the witness stand. The defendant argues that all of the articles turned up by the search were capable of an innocent explanation. While that is so, they also could reasonably have been found to be incident to the purpose of gaming. "Articles which ordinarily serve other purposes may be found to be devices and apparatus for gaming purposes if they are reasonably adapted to, and at the time in question are intended and actually used for, those purposes." *State* v. *Tolisano,* supra, 215. The defendant emphasized, by his denial, the issue as to whether he flushed the toilet as the officers claimed he did as they entered the house. The frequency with which this method of disposing of betting records is resorted to is well known. See *State* v.

*Mariano,* 152 Conn. 85, 97, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962. The defendant, contrary to his statement at the time of the search, testified that all of the $881 found by the officers represented his winnings at a racetrack, and he also testified that the money found on his person was intended for gambling at a track on the day of the search. He testified further that most of his income came from betting, although he insisted that he confined the activity to betting at the racetrack. He made no claim that the telephone calls which had been intercepted by the police were not authentic.

The court had the opportunity, not available in a printed record, to evaluate the evidence after observation of the defendant and the witnesses. Upon all of the evidence the conclusion of the court that the defendant was guilty of the crime charged beyond a reasonable doubt cannot be disturbed.

There is no error.

In this opinion the other judges concurred.