**UNITED STATES ex rel.**
**James DeNEGRIS**
**v.**
**William N. MENSER, Sheriff.**
**Civ. No. 11117.**

United States District Court
D. Connecticut.

Nov. 30, 1965.

Alfonse C. Fasano, New Haven, Conn. for petitioner.

George R. Tiernan, State's Atty., David B. Salzman, Asst. State's Atty., New Haven, Conn., for respondent.

BLUMENFELD, District Judge.

In this habeas corpus proceeding, petitioner, a state prisoner held to serve a sentence of eight months, to be followed by probation for two years, pursuant to a judgment of conviction of the Superior Court of the crime of pool selling (Conn. Gen.Stats.Ann. § 53–295) alleges that illegally seized evidence was introduced at his trial in violation of his rights under the fourteenth amendment. On appeal, the judgment of conviction was unanimously affirmed. State v. DeNegris, Conn., 153 Conn. 5, 212 A.2d 894 (1965).

The principal claim made here is that the affidavit for the search warrant pursuant to which the evidence was obtained was insufficient to establish probable cause.[1] The record on appeal to the Supreme Court of Errors which has been examined by the court indicates that a written motion to suppress the evidence was made prior to trial for the reason that "the issuance of the search warrant was predicated upon an affidavit which was insufficient under the law as laid down in Jones v. United States, 362 U.S. 257, for the reason that * * *" followed by several references to the affidavit calculated to support the claim that the affidavit did not sufficiently show the reliability of the informer or corroboration of information received from him.[2] The motion was denied without opinion and a trial to the court began shortly thereafter. Throughout the trial, objection to the admission of the evidence was made on the ground that the warrant under which it had been obtained was not predicated upon a proper and sufficient affidavit.

### Exhaustion of State Remedies

In the return filed by the state to the rule to show cause why this petition should not be granted issued by this court, it alleges that state remedies have not been exhausted. The Judicial Code, 28 U.S.C. § 2254, requires that a state prisoner who seeks a federal writ of habeas corpus first must show that he "has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

1. All of the evidence before me is documentary, the affidavit and the record on appeal to the Supreme Court of Errors, including the brief with appendix of the defendant which are attached to the petition as Exhibits A, B and C, respectively. The brief of the state filed in the Supreme Court of Errors and a copy of the Search Warrant which was introduced into evidence at the state court trial have been furnished to me by counsel for the state, and are marked Exhibits 1 and 2 respectively.

2. Among the 5 several grounds for a motion to suppress evidence obtained by search and seizure enumerated in the statute, (4) provides: "There was not probable cause for believing the existence of grounds on which the warrant was issued." (Conn.Gen.Stats.Ann. § 54–33f)

■ All but one of the particularized contentions relating to the insufficiency of the operational content of the affidavit on which the warrant issued were decided adversely to the petitioner by the Supreme Court of Errors. No further proceedings are necessary to exhaust state remedies with respect to them. United States ex rel. West v. LaVallee, 335 F.2d 230 (2d Cir. 1964); United States ex rel. Weinstein v. Fay, 333 F.2d 815 (2d Cir. 1964).

■■ As to the remaining argument that the affidavit failed to specify the date when the informant's observation was made, the Supreme Court of Errors stated:

"This claim is raised for the first time in the brief. We find no mention of it among the grounds specified in a motion to suppress made prior to the trial, in the objections to evidence offered at the trial, or in the claims of law, and consequently we do not consider it. State v. McLaughlin, 132 Conn. 325, 339, 44 A. 2d 116." State v. DeNegris, 212 A. 2d at 895–896.

If this rejection by the state court of the opportunity to pass upon this element of the petitioner's claim because of insistence upon compliance with its procedural rules forecloses him from having it passed upon in Connecticut courts in a post-conviction proceeding, as it probably does because of Connecticut's rule that habeas corpus cannot serve as an appeal for questions which might have been raised for direct review, Wojculewicz v. Cummings, 143 Conn. 624, 628, 124 A.2d 886 (1956); In re Bion, 59 Conn. 372, 386, 20 Atl. 662 (1890); Brisson v. Warden, 25 Conn.Sup. 202, 205, 200 A.2d 250 (1964), this court may, nonetheless, consider it in this habeas corpus proceeding, cf. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L. Ed.2d 408 (1965); unless, of course, petitioner's failure to comply constituted a deliberate by-passing of orderly state procedure within the meaning of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Surely, there was no deliberate by-passing here, for an attempt *was made* to have the state Supreme Court pass on this particular facet of his constitutional claim under the same evidence already contained in the record. Such a situation is far outside the qualification of the doctrine of Fay v. Noia. In any event, it nowhere appears in the affidavit that the information received by the officers from the informant was even based on the latter's observations. Since discussion later in this opinion will be focused upon the determinative effect of that point, the need for a date when "observations," thus only hypothetical, were made in order to support the petitioner's contention that the information in the affidavit was also too stale to support a warrant at the time it was presented to the judge would be surplusage. Thus, there is no need to delay this proceeding to further satisfy exhaustion requirements.

It must be concluded, therefore, that the state court remedies have been sufficiently exhausted to permit consideration of this petition on its merits.

*The Sufficiency of the Affidavit*

■ Neither party asks for an evidentiary hearing, and, indeed, none is required; the information which was the sole basis for the issuance of the warrant was all contained within the four corners of the affidavit before me. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention." Aguilar v. Texas, 378 U.S. 108, 109, n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964).

The problem presented is whether the warrant pursuant to which the petitioner's home was searched and evidence uncovered leading to the petitioner's conviction for pool selling satisfied the constitutional requirement that all such warrants issue only on probable cause to believe that a crime was being committed on the suspect premises. I hold that the magistrate who issued the warrant in the instant case did not have before him

sufficient facts and circumstances upon which a finding of probable cause could be made, and that the subsequent search was an unconstitutional intrusion into the privacy of the petitioner's residence.

■■ The fourth amendment to the United States Constitution contains the following command:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is now settled that the fourth amendment's prohibition against unreasonable searches and seizures are enforceable against the states through the fourteenth amendment, Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962), and that the standard of probable cause "for *obtaining* a search warrant is likewise 'the same under the Fourth and Fourteenth Amendments.'" Aguilar v. Texas, supra, 378 U.S. at 110, 84 S.Ct. at 1512. (Emphasis added).

The determination of the issuing magistrate was based solely upon an affidavit sworn to by two Connecticut state police officers. Shorn of excess verbiage, this affidavit sets forth the following: (1) "information has been received * * * from a person who has furnished reliable information in the past * * * that the premises has been and is being used * * * in violation of the gaming laws * * * and wherein are possessed certain slips, money, papers, records, paraphernalia, memoranda, and telephones used in connection with the crimes of policy placing and pool selling;" (2) police investigation has revealed that the residents had a police record charging both with pool

selling on April 1, 1960, that two unlisted phones went into the premises, and that certain utility bills were sent to a third party.

■ The frame of reference for determination of probable cause to issue a search warrant was set forth in Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032 (1925), where the Supreme Court stated:

"In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

"Probable cause" and "reasonable grounds" are substantial equivalents and may be founded upon evidence which is not legally competent in a criminal trial, see Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and may be determined on factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians act. United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965).

■ Because ultimate guilt is not in issue, the logic of the system permits the facts to be presented as hearsay from an informant, so long as the informant is "reliable." Jones v. United States, 362 U.S. 257, 269–272, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960). But see, United States v. Ramirez, 279 F.2d 712, 715 (2d Cir. 1960). But reliability is not all. It has been repeatedly emphasized, see *e. g.*, United States v. Ventresca, supra; Giordenello v. Unit-

ed States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), that the finding of probable cause must be made by a "neutral and detached magistrate," Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and that "the reasons for this rule go to the foundations of the Fourth Amendment." Aguilar v. State of Texas, supra, 378 U.S. at 111, 84 S.Ct. at 1512. Since the axe of reason must be applied to facts by the magistrate, there must be facts presented to him.

"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [gambling paraphernalia] were where he claimed they were * * *. Otherwise, 'the inferences from the facts, which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime.'" Aguilar v. Texas, supra, 378 U.S. at 114–115, 84 S.Ct. at 1514 (Emphasis added).

What was said by the Supreme Court in holding that the affidavit in Aguilar v. Texas did not provide a sufficient basis for a finding of probable cause is equally applicable here:

"The vice in the present affidavit is at least as great as in *Nathanson* and *Giordenello*. Here the 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there

were narcotics in petitioner's possession.[4] The magistrate here certain-

"4. To approve this affidavit would open the door to easy circumvention of the rule announced in *Nathanson* and *Giordenello*. A police officer who arrived at the 'suspicion,' 'belief' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession.

ly could not 'judge for himself the persuasiveness of the facts relied on * * * to show probable cause.' He necessarily accepted 'without question' the informant's 'suspicion,' 'belief' or 'mere conclusion.'" Aguilar v. Texas, 378 U.S. at 113–114 and n. 4, 84 S.Ct. at 1513–1514.

In this case, the information received from the reliable source is the core of the affidavit; the police observations could not by themselves stand as a basis for a finding of probable cause, whether taken individually or collectively. United States v. Geball, 209 F.Supp. 11 (E.D.Mich.1962); United States v. Betz, 205 F.Supp. 927 (E.D.Mich.1962); United States v. Price, 149 F.Supp. 707 (D.D.C.1957); People v. Fino, 14 N.Y. 2d 160, 250 N.Y.S.2d 47, 199 N.E.2d 151 (1964). The affidavit here is fundamentally no more than the bare statement that the police received information from a reliable source that pool selling was being carried on at petitioner's premises. It nowhere discloses how the informant came to his stated conclusion. On what facts was it based? Did he actually see the pool selling being carried on or the "paraphernalia"? Did he hear it from another unmentioned source, or is his statement based on mere suspicion? "[W]hat the police say does not necessarily carry the day; 'probable cause' is in the keeping of the magistrate." United States v. Ventresca, supra, 380 U.S. at 117, 85 S.Ct. at 750 (Douglas, J., dissenting). If, rather than the proper official, it is the police

or, as in this case and in *Aguilar*, even an unidentified third party who decides whether the facts known to him are a sufficient indication that probable cause exists for the issuance of a warrant, the amendment would be reduced "to a nullity and leave the people's houses secure only in the discretion of police officers." Johnson v. United States, supra, 333 U.S. at 14, 68 S.Ct. at 369.

No matter how closely and how liberally the affidavit is scrutinized, there is no "common sense" way, nor any other way, of importing into the informant's statement an answer to what *his conclusion* was based upon—and that is what *Aguilar* requires to be before the magistrate.

■ Another point remains. The petitioner alleges in conclusory language that his conviction was based upon evidence "obtained without a proper search warrant. (Exhibit A)." Exhibit A, which is a true copy of the affidavit on which the warrant was based, also contains the oath administered to the affiants by the judge, and his finding. Whether the warrant was "proper" under Connecticut's law is not controlling. "The States are not * * * precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." Ker v. California, supra, 374 U.S. at 34, 83 S.Ct. at 1630. Although he has alleged it, it is not necessary for the petitioner to prove that the warrant was not "proper" in order to establish that it was not valid. The issue is one of substance, not form. The test to be applied is not in dispute. Concern here is only with whether the warrant was issued "upon probable cause" as provided by the fourth amendment; a question to be tested by the application of settled principles of federal constitutional law

enunciated by the Supreme Court. The warrant was issued by a judge acting pursuant to the provisions of a state law imposing that duty upon him. The legality of the warrant under Connecticut law is governed by Conn.Gen.Stats. § 54-33a (1964 Cum. Pocket Part), the pertinent parts of which provide:

"(b) Upon complaint * * * by any two credible persons, to any judge of the superior court * * * that * * * they have probable cause to believe that any property * * * is within * * * any place * * * [sic] [he] may issue a warrant * * * to * * * search * * *.

"(c) A warrant shall issue only on affidavit sworn to by the * * * complainants before the judge and establishing the grounds for issuing the warrant * * * If the judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant * * * It shall state the grounds or probable cause for its issuance * * * (1963 P.A. 652 §§ 1, 3)."

The oath taken by the two credible persons and the finding of the judge appear over his signature in the last 5 lines at the foot of the affidavit (Appendix A):

"[They] made solemn oath before said Court that they have probable cause to believe the allegations in said complaint.

"And said Court finds said complainants have adequate cause for such belief."

That finding appears to mean that the two police officers had "probable cause to believe" their allegation in their affidavit "that probable cause exists for the issuance of a search warrant. * * * *"

Any contention that this finding at the foot of the affidavit merely suggests an ambiguity arising out of a plausible linking together of the two alternate findings either of which the judge was required to make as provided by part (c) of § 54-33a quoted above, and should be regarded as nothing more than a

mere technical defect, would seem to be completely dispelled by the judge's statement in the warrant itself which he issued on that same day. Pursuant to the statute's requirement that the warrant "shall state the grounds of probable cause for its issuance," this statement appears:

"Whereas, it appears to me, a Judge of the Superior Court, upon oath before me of [two members of the state police and *they*] have probable cause to believe that certain property, to wit: * * *." is concealed in the described premises.

In emphasizing that the reasons for the rule, which demands certain qualifications for those persons who may be permitted to make the determination of probable cause, "go to the foundations of the Fourth Amendment," the Supreme Court has quoted with approval the following statement by Mr. Justice Jackson so often that it may be regarded as classic:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. at 13–14, 68 S.Ct. at 369.

Thus, although the warrant was properly issued on a discriminating reading of the requirements of Connecticut's statute, it is equally clear that the issuing magistrate, by following the statute, did not apply his own judgment to determine the inferences to be drawn from the affidavit.

Even if the finding that the two officers had "probable cause"—readily explicable as being due to the terms of the statute—could, through some strained construction possibly be held to mean that the judge himself had found probable cause, yet that could not of itself circumvent the necessity that the affidavit contain a recital of sufficient facts or underlying circumstances to support it. See Aguilar v. Texas, supra.

■ Having returned to the central thesis of this opinion, let me sum up the facts and conclusions very concisely:

1. The only evidence upon which the search warrant was based is contained in the affidavit, Exhibit A.

2. The affidavit does not contain sufficient facts upon which to base a finding of "probable cause."

3. There was no probable cause for the issuance of the warrant.

4. The warrant was constitutionally invalid.

5. The materials obtained as a result of the illegal entry and search of defendant's residence pursuant to that warrant were introduced into evidence over the defendant's objection at the trial which resulted in his conviction.

6. The admission of that evidence violated the defendant's constitutional rights. Mapp v. Ohio, supra, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

7. That evidence contributed to his conviction. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

8. A writ of habeas corpus should be issued to release the petitioner from the custody of the respondent.

It is ordered that a writ of habeas corpus should issue out of this court directing production of the body of the petitioner, James DeNegris, before this court on the 2nd day of December, 1965.

### APPENDIX A

#### "AFFIDAVIT

"Information has been received by Major Leslie W. Williams and Sergeant Wayne H. Bishop of the State Police Department from a reliable source, a person who has furnished reliable information in the past, completely substantiated by subsequent investigation, that the premises located at 10 Bailey

Drive, West Haven, more fully described below, has been and is being used to receive and disseminate information, in violation of the gaming laws of the State of Connecticut, and wherein are possessed certain slips, moneys, papers, records, paraphernalia, memoranda, and telephones used in connection with the crimes of policy playing and pool selling.

"A check was made of this address and it was found to be occupied by James and Marie DeNegris. There are two unlisted telephones into these premises with one extension, one listed to a Linda DeNegris. The West Haven street directory lists occupant of this house as James B. DeNegris. Marie is listed as his wife, same address.

"Employment for James DeNegris is listed as Salesman for S. R. Benedetto, Builder, 96 Jones Street, West Haven. A check with the Electric Co. showed that service in this house is billed to one James Carrano of No. 10 Bailey Drive, West Haven. Check with the Motor Vehicle Department showed that description and date of birth of July 5, 1936 is the same description and date of birth as James Carrano. The same is true with Marie DeNegris with date of birth of January 8, 1938. This is the same description and date of birth as Marie Carrano. James Carrano and Marie Carrano both have a police record with our department charging both with Pool Selling and Baseball Pool on April 1, 1960.

"Check with the Water Company showed that service for this place is #6, Lot #10 and billed to Valentine LaRocco.

The Water Co. has two #6 listed, the other is for William Reinfelder, #6 Bailey Drive.

"A car, Conn.Reg. 371-021, 1962 black Chevrolet has been observed parked in the yard. This is listed to Marie DeNegris at #6 Bailey Drive, West Haven. Also observed coming to the house and operated by an unknown white male was Conn.Reg. 658-155, a 1963 Oldsmobile hard top, color white, also listed to Marie DeNegris at #10 Bailey Drive, West Haven. Also observed coming to the house at the time when gaming operations are normally conducted was a 1963 Black Cadillac, Conn. Repairer Reg. Ra-2046. This is listed to Vinnie's Sunoco Service Station, 5 Jones Hill Road, operated by one Vincent J. Russo.

"This house is described as a one-family combination ranch and split level, color red and white, with a stone front. It is on the South side of the street facing North. There is a driveway on the West side of the house. Also on the West side of the house coming from a telephone pole in front are two phone wires. They run to the upper rear side of the West side. This house is of new construction and is one of three identical houses on the South side of the street. It is the middle house.

"Based on information of the previous reliable informant and the information above, we respectfully allege that probable cause exists for the issuance of a search warrant for the above described premises.

s/ Leslie Williams
s/ Wayne H. Bishop

"STATE OF CONNECTICUT:            Town of Hamden
                                      ss:   29th day of August, A. D., 1963
NEW HAVEN COUNTY:

"Then and there personally appeared Leslie W. Williams and Wayne H. Bishop, complainants, and presented to said Court the foregoing complaint by them signed, and made solemn oath before said Court that they have probable cause to believe the allegations in said complaint.

"And said Court finds said complainants have adequate cause for such belief.

s/  John R. Thim

Judge of the Superior Court  "