**UNITED STATES ex rel. James DeNEGRIS, Relator-Appellee,**

v.

**William N. MENSER, Sheriff, Respondent-Appellant.**

**No. 327, Docket 30241.**

United States Court of Appeals
Second Circuit.

Argued April 14, 1966.

Decided April 14, 1966.

---

24. The relevant portion of § 10 reads as follows:

"The project for flood control and other purposes for the Kings River and Tulare Lake Basin, California, is hereby authorized substantially in accordance with the plans contained in House Document Numbered 630, Seventy-sixth Congress, third session, with such modifications thereof as in the discretion of the Secretary of War and the Chief of Engineers may be advisable at an estimated cost of $19,700,000: *Provided, That the conditions of local cooperation specified in said document shall not apply: Provided further,* That the Secretary of War shall make arrangements for payment to the United States by the State or other responsible agency, either in lump sum or an-

nual installments, for conservation storage when used: *Provided further,* That the division of costs between flood control, and irrigation and other water uses shall be determined by the Secretary of War on the basis of continuing studies by the Bureau of Reclamation, the War Department, and the local organizations." (emphasis added.)

Alfonse C. Fasano, New Haven, Conn., for relator-appellee.

George R. Tiernan, State's Atty., New Haven, Conn., for respondent-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

We affirmed in open court the order of the District Court for the District of Connecticut which granted the petition of James DeNegris for a writ of habeas corpus, on the ground that evidence admitted over his objection at the state court trial, in which he was convicted, had been obtained through the use of an unlawfully issued search warrant.

DeNegris was tried and convicted on March 5, 1964 in the Superior Court of the State of Connecticut on an information charging him with the crime of pool selling (Conn.General Statutes § 53–295). He was sentenced, as a third offender, to a term of one year and was fined $400. The Supreme Court of Connecticut affirmed the conviction, and in so doing, rejected the reasons advanced by the defendant for the insufficiency of the affidavit supporting the search warrant ob-

tained by the State Police.[1]  State v. De-   On the present appeal the respondent
Negris, 153 Conn. 5, 212 A.2d 894 (1965).   claims that the trial court was in error

1. The affidavit of the police officers and the magistrate's statement on probable
cause are as follows:

"Information has been received by Major Leslie W. Williams and Sergeant
Wayne H. Bishop of the State Police Department from a reliable source,
a person who has furnished reliable information in the past, completely
substantiated by subsequent investigation, that the premises located at 10
Bailey Drive, West Haven, more fully described below, has been and is
being used to receive and disseminate information, in violation of the gam-
ing laws of the State of Connecticut, and wherein are possessed certain
slips, moneys, papers, records, paraphernalia, memoranda, and telephones
used in connection with the crimes of policy playing and pool selling.

"A check was made of this address and it was found to be occupied by James
and Marie DeNegris. There are two unlisted telephones into these prem-
ises with one extension, one listed to a Linda DeNegris. The West Haven
street directory lists occupant of this house as James B. DeNegris. Marie
is listed as his wife, same address.

"Employment for James DeNegris is listed as Salesman for S. R. Benedetto,
Builder, 96 Jones Street, West Haven. A check with the Electric Co.
showed that service in this house is billed to one James Carrano of No. 10
Bailey Drive, West Haven. Check with the Motor Vehicle Department
showed that description and date of birth of July 5, 1936 is the same de-
scription and date of birth as James Carrano. The same is true with
Marie DeNegris with date of birth of January 8, 1938. This is the same
description and date of birth as Marie Carrano. James Carrano and Marie
Carrano both have a police record with our department charging both with
Pool Selling and Baseball Pool on April 1, 1960.

"Check with the Water Company showed that service for this place is #6,
Lot #10 and billed to Valentine LaRocco. The Water Co. has two #6
listed, the other is for William Reinfelder, #6 Bailey Drive.

"A car, Conn. Reg. 371-021, 1962 black Chevrolet has been observed parked
in the yard. This is listed to Marie DeNegris at #6 Bailey Drive, West
Haven. Also observed coming to the house and operated by an unknown
white male was Conn. Reg. 658-155, a 1963 Oldsmobile hard top, color
white, also listed to Marie DeNegris at #10 Bailey Drive, West Haven.
Also observed coming to the house at the time when gaming operations are
normally conducted was a 1963 Black Cadillac, Conn. Repairer Reg. Ra-
2046. This is listed to Vinnie's Sunoco Service Station, 5 Jones Hill Road,
operated by one Vincent J. Russo.

"This house is described as a one-family combination ranch and split level,
color red and white, with a stone front. It is on the South side of the
street facing North. There is a driveway on the West side of the house.
Also 'on the West side of the house coming from a telephone pole in front
are two phone wires. They run to the upper rear side of the West side.'
This house is of new construction and is one of three identical houses on
the South side of the street. It is the middle house.

"Based on information of the previous reliable informant and the information
above, we respectfully allege that probable cause exists for the issuance
of a search warrant for the above described premises.

s/  Leslie  Williams
s/  Wayne  H.  Bishop

"State of Connecticut:                Town of Hamden
                              ss:     29th day of August, A.D., 1963
New Haven County:

"Then and there personally appeared Leslie W. Williams and Wayne H.
Bishop, complainants, and presented to said Court the foregoing complaint
by them signed, and made solemn oath before said Court that they have
probable cause to believe the allegations in said complaint.

"And said Court finds said complainants have adequate cause for such
belief.

s/  John  R.  Thim
Judge  of  the  Superior  Court"

(a) in concluding that the petitioner had exhausted his state remedies and (b) in holding that the affidavit, in reliance on which the magistrate had issued the search warrant, was insufficient to meet the requirements for a showing of probable cause under the Fourth Amendment to the Federal Constitution.

■ With regard to the exhaustion of state remedies, Judge Blumenfeld's discussion of the point correctly analyzes the controlling cases and the principles involved, and properly applies them to the facts of this case. 247 F.Supp. 826, 828–829 (D.Conn.1965). It is necessary only to mention the appellant's complaint, strongly urged on this appeal, that the trial judge ignored the case of United States ex rel. Whiteside v. Slavin, 309 F.2d 322 (2d Cir. 1962). The *Whiteside* case is clearly distinguishable from the present case, however, because Whiteside had never, in his appeal to the Supreme Court of Connecticut, raised the federal constitutional issues which were the bases of his habeas corpus petition in the United States District Court. In the present case, DeNegris, in his direct appeal to the Supreme Court of Connecticut, fully presented four of the five reasons which he claimed demonstrated that the affidavit, used as the basis for the finding of probable cause, was inadequate, and that, therefore, the issuance of a search warrant was invalid under the Fourth Amendment to the Federal Constitution. The other ground of attack was presented to the Supreme Court of Connecticut in DeNegris' brief and on oral argument, so that the constitutional claim was before that court, which refused to consider it for procedural reasons. It is undoubtedly because of this significant difference that Judge Blumenfeld omitted reference to the *Whiteside* case.

As to the insufficiency of the affidavit, the trial court's holding concerned the conclusory nature of the informant's statement to the police officers and the fact that the magistrate concluded, not that *he himself* was satisfied that the affidavit showed the existence of probable cause, but that the *police officers* had adequate cause to believe there was probable cause.

The portion of the affidavit which mentioned the informant and what he had to say is not distinguishable in nature and scope from that held to be insufficient in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963).[2] Neither affidavit gave any of the underlying facts on which the informant had based his belief so that the magistrate could have made an independent judgment. In *Aguilar* the Supreme Court said, however, that if in addition the affidavit had included a report that the premises sought to be entered and searched had been kept under surveillance, the results of which had been disclosed, the case would have been entirely different. The affidavit in the present case fairly implies that there had been some such surveillance which had revealed that there was an automobile in the yard registered in the name of petitioner's wife, and that another car, operated by an unknown white male, registered in her name came into the yard. It also disclosed that someone, presumably the police, observed a black Cadillac, owned by a third person and driven by one Russo, arrive at the house "at a time when gaming operations are normally conducted." It reported that the house was the middle one of three identical houses with two telephone wires running to it, and that it was a "one-family combination ranch and split level, color red and white, with a stone front." It is our opinion that the fruits of this surveillance were not, standing by themselves, sufficient to support a finding of probable cause; nor were they, considered in connection with the informant's

---

2. "'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic para- phernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.'"

statements, enough of a confirmation of the reliability of those statements to furnish a substantial basis for the existence of probable cause. Of course, other matters set forth in the affidavit might be used to support and to some extent explain and justify the informant's conclusions. The Connecticut court laid considerable emphasis upon the unusual circumstance that two telephone lines ran to "an apparently modest dwelling." But the description of the single family dwelling in the affidavit does not show it to be so cheap and small and in such a poor neighborhood or surrounded by other circumstances that make it obviously incongruous for two telephone lines to be connected with it. There are innocent reasons why even a modest house may have such telephone connections.

■■ The only other facts mentioned in the affidavit are that the house charges for electricity were billed to the petitioner and his wife under pseudonyms; and that the water bill for the house was under another name at a different address. It is not clear what inference can be drawn from this in view of the fact that petitioner was listed in the city directory and with the telephone company (although with unlisted numbers) as living in the searched premises, and the automobiles were plainly registered in the wife's name. The affidavit also disclosed that the petitioner and his wife had been listed in the police records as having been "charged" with pool selling in 1960. There is no mention of the disposition of the charge and, as the record stands, it cannot be taken as even hearsay evidence that petitioner actually engaged in gambling activities in 1960. At best, it only implies that the police suspected them of gambling activity at that time. It may be noted that the petitioner in the present case was charged as a third offender; why the two prior convictions were not mentioned in the affidavit is not clear. This would have given support to inferences to be drawn from other statements contained in it. But we cannot consider these prior convictions because "the reviewing court may consider only information brought to the magistrate's attention." Aguilar v. State of Texas, supra, at 109, 84 S.Ct., at 1511, footnote 1.

■ None of the factual recitations of the affidavit, therefore, redeem the informant's statement from its obvious insufficiency in the light of the *Aguilar* case; none of them furnish a substantial basis for confirming the conclusions which the informant expressed.

■■ The other difficulty with the affidavit and the magistrate's finding concerning probable cause is the assumption that the essential prerequisite to the issuance of a search warrant is that the *police officers* must be satisfied that there is probable cause, when the clear, mandatory constitutional requirement is that the search must be based upon the *magistrate's* determination of probable cause and not on that of the police officers.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10 at 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

"The purpose of the complaint, then, is to enable the appropriate magistrate * * * to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion * * *." Giordenello v. United States, 357 U.S. 480 at 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958), cited in Aguilar v. State of Texas, supra, 378 U.S. at 112, 84 S.Ct. 1509.

The appellant argues that in the present case the magistrate actually did make his own finding that there was probable cause, because after stating that the police officers "made solemn oath * * * that they have probable cause * * * " he went on to say, "and said court finds that said complainants have adequate cause for such belief." It may well be that the magistrate was himself satisfied that probable cause existed and maybe that is what he meant; but he never said so in explicit terms. He never said that on the basis of the affidavit *he,* the magistrate, found probable cause. What he did say makes it clear that it is the *police officers'* finding of probable cause that he is talking about; and, although by saying that they had adequate cause for their belief, he may have also been expressing his own belief that probable cause existed, that is far from certain. In fact, the more likely interpretation of the wording used is that the magistrate was satisfied that there was, at the time within the knowledge of the policemen, enough basic evidential material for *them* to draw certain inferences which justified the *policemen's* conclusion of probable cause.[3] The magistrate nowhere says he would have drawn the same inferences, or would have reached the same conclusion. This failure to comply with the requirements of the Fourth Amendment renders the search warrant invalid.

We are not unmindful that search warrants often have to be prepared and issued on very short notice and each one cannot be a model of theoretical perfection. It is also usually true that highly skilled and experienced police officers, such as those in the present case, after investigating suspicious activity, have in their minds innumerable intangible evidential threads, not easily expressed or described, which convince them that particular criminal activity is going on. Their conclusions as to the defendant in the present case was amply confirmed by the subsequent search, and it may appear to be a blow to law enforcement and the public interest that clear evidence, though illegally obtained, should be excluded. But that is the rule, and it has been adopted as the only effective means of protecting the rights of individuals under the Fourth Amendment, made applicable to the States through the Supreme Court's decisions in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962).

The Connecticut legislature, after repealing a statute which authorized the issuance of a search warrant on a sworn statement of suspicion alone, has sought to conform the statute on the issuance of a search warrant (General Statutes § 54–33a, as amended in 1963) to these decisions. The interpretation and application of the amended statute must strictly comply with the standard enunciated by the Supreme Court of the United States in Aguilar v. State of Texas, supra, and the cases cited therein. Although the Supreme Court of Connecticut, in a lucid exposition of its holding, has reached a

---

3. This is confirmed by the first paragraph of the search warrant itself which is as follows:

> "WHEREAS, it appears to me, a Judge of the Superior Court, upon the oath before me of Leslie W. Williams and Wayne H. Bishop, members of the Connecticut State Police, that the said Leslie W. Williams and Wayne H. Bishop have probable cause to believe that certain property, to wit: slips, monies, papers, records, memoranda sheets and paraphernalia and telephones used for the purpose of policy playing and/or pool selling, are concealed in the premises of James and Marie DeNegris, on the south side of Bailey Drive, West Haven, Connecticut, said house is sometimes designated as 10 Bailey Drive, the same being a combination ranch and split level, color red and white with a stone front, new construction, and is the middle house of three identical houses on the south side of the street."

This may be contrasted with the language of Form 15, Federal Rules of Criminal Procedure, where the magistrate declares "and as I am satisfied that there is probable cause to believe * * * " This is particularly designed to implement the related provision of the Fourth Amendment.

conclusion in this case which is the opposite of our own, we must, nevertheless, for the reasons stated, adhere to our opinion that the facts set forth in the affidavit were not sufficiently substantial, that it is extremely uncertain that the magistrate himself found probable cause to exist, and that a search warrant should not, therefore, have issued.

The order of the District Court is affirmed.