**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marion HAYWOOD, a/k/a Black Jack,
Defendant-Appellant.**

**No. 17878.**

United States Court of Appeals,
Seventh Circuit.

Oct. 29, 1970.

Rehearing Denied Nov. 12, 1970.

Jerome Rotenberg, Rotenberg, Schwartzman & Richards, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Allan E. Lapidus, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter

Lulinski, Jeffrey Cole, Michael B. Cohen, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KNOCH, Senior Circuit Judge.

Defendant-appellant, Marion Haywood, was convicted in a bench trial on a one-count indictment charging him with a narcotics offense in violation of Title 21, United States Code, § 174 and sentenced to a term of seven years.

On appeal, defendant-appellant contends that the trial Judge erred in denying defendant's pretrial motion to suppress as evidence heroin which was seized from him after a warrantless arrest which defendant asserts was made without probable cause.

At the hearing on motion to suppress, Special Agent John Peoples of the Bureau of Narcotics and Dangerous Drugs, the arresting officer, testified that in October 1968 he was employed by the Chicago Police Department in the Vice Control Division, Narcotics Section.

He was in the area of 50th Street and St. Lawrence in Chicago on October 3, 1968, and from discussions in the area while working in an undercover capacity, he said he learned that the third floor at 5034 South St. Lawrence Street was a known address for illegal narcotics activity.

In the evening of October 10, 1968, he returned to the area and had further conversation as a result of which he entered the building at 5034 South St. Lawrence via the gangway south of it, and climbed the rear stairway to the third floor south apartment, having also learned the lights were turned off when narcotics activities were in process. He found the back entrance barred. To him, as an experienced narcotic agent, this meant that narcotics were in the apartment.

He knocked at the door. It was opened. A man, he later found to be Marion Haywood also known as "Black Jack", shined a flashlight in his face, and asked what he wanted. Agent Peoples said he had come to "cop", which he explained meant to purchase narcotics. He pushed a quantity of money through a hole in the screen and through the bars. The man counted the money and handed Agent Peoples an aluminum package. He continued surveillance of the building and on October 14, 1968, and, again, a week or two later, he made other similar purchases of narcotics but not from the defendant.

However, he had seen the defendant enter the building prior to October 10, 1968, being admitted at the front door through a buzzer device.

As defense counsel said at the hearing on motion to suppress, it is not unusual for non-residents to be admitted to a building by a buzzer system and the watching agents had no way of being sure which apartment was being visited. However a number of persons seen being so admitted were known to Agent Peoples and this fact, taken in conjunction with the rest of the agent's information in the light of his experience, had some significance. During the period from October 1968 to May 1969, he had conducted surveillance in the area some 50 to 60 times. During about 40 instances when he was watching the rear of the building he saw numerous persons come through the gangway and up to the third floor, just as he himself had been instructed to do, knock at the door, which opened. After standing there a few minutes, these persons would come back down the steps and out through the gangway.

On May 12, 1969 Agent Peoples was again in the area. He was accompanied by Special Agent Kenneth George Cloud, of the Department of Justice, Bureau of Narcotics and Dangerous Drugs. At about 7:30 P.M. he noticed a number of persons known to him to be narcotics

users standing at the corner of 47th and St. Lawrence. As he watched, some of them left 47th and St. Lawrence and walked south to 50th and St. Lawrence. He followed, and saw them standing at that corner. He also observed the rear of 5034 South St. Lawrence just prior to 9:00 P.M. and noticed that the light in the third floor south apartment was on and the bars were off the door.

The presence of lights and the absence of bars must have indicated to Agent Peoples that narcotics were not at that point being sold in the apartment. The waiting users must also have indicated that sales were anticipated, and that a delivery of narcotics must be expected.

About 9:00 P.M. a livery cab northbound on 51st Street stopped in front of 5034 South St. Lawrence and defendant got out carrying a brown paper package and walked toward 5034 South St. Lawrence Street.

After Agent Peoples told Special Agent Cloud who the defendant was, Agent Cloud called out "Black Jack". Defendant put the package under his coat and proceeded rapidly toward 5034 South St. Lawrence, at which point the buzzer on the door there began to ring.

Defendant makes a point of the fact that the agents could not know from which of the six apartments the buzzer had been activated, but in any case, had defendant not been arrested it was reasonable to expect that he would enter the building and shortly be beyond reach with the suspect contents of the package he was concealing under his coat.

This was quite unlike the situation in United States v. Harris, 6 Cir., 1963, 321 F.2d 739, on which defendant relies.

After a telephone call from an informant formerly found reliable, seven agents went from the Bureau of Narcotics, with no attempt to secure a search warrant, to the apartment of John Harris, who opened his door slightly but promptly tried to slam it shut when told he was under arrest, a statement he denied hearing. The agents then broke in with great force from two directions, and placed John Harris under arrest. Search of the apartment did disclose narcotics.

Although the agents had been informed that Harris would soon take his contraband supplies to another location, his situation was not as urgent as that of a man moving from a vehicle into a building in which he did not reside. The District Judge in granting motion to suppress the evidence in *Harris* had held that in that case the search was not an incident to the arrest but was the principal reason for going to the apartment. In affirming, the majority of the panel on appeal held that the arrest was a mere pretext to avoid the inconvenience of securing a search warrant which ordinarily would have been required under the Fourth Amendment. Cf. United States v. Sharpe, 6th Cir., 1963, 322 F.2d 117, 120. There the Sixth Circuit distinguished *Harris* on its facts from *Sharpe* where the evidence indicated circumstances calling for quick action by the officers who effected forcible entrance into an apartment without warrant to avoid the peril of destruction of evidence.

Defendant also directs our attention to United States v. Burhannon, 7th Cir., 1968, 388 F.2d 961 where a defendant in a taxicab was stopped and arrested. There the arrest without warrant was held to be unlawful and the subsequent search and seizure of heroin unjustified as incidental to a lawful arrest. One of the officers who testified at the hearing on motion to suppress the evidence said that there had been only suspicion that Burhannon possessed narcotics when he was seen coming down the rear steps of his own residence, one hand in his coat. He was seen to glance around and enter a taxicab.

This Court found the information possessed by the police in *Burhannon* prior to the arrest was too remote and vague

to give rise to probable cause to believe Burhannon was in possession of narcotics. The statements received from informants lacked particularity, containing no names, dates or location of sales, or sources of the information passed on which could be independently verified in any reasonable manner. This is in sharp contrast to the information directly acquired by Agent Peoples himself.

This Court concluded that what the arresting officers observed on the day of the arrest of Burhannon added nothing to their knowledge.

As the defendant in the case before us was running for the door, the two agents approached, calling out "Special Agents, you're under arrest." The defendant then raised his hand with two brown paper bags in it. These later proved to contain heroin hydrochloride.

Defendant argues that in this neighborhood after dusk, it was not furtive or unreasonable for one in the street to flee at the approach of strangers, but it was equally reasonable for the waiting agents, armed with the knowledge they already possessed, to take into consideration the defendant's furtive actions in deciding whether or not to make an arrest. Sibron v. New York, 1968, 392 U.S. 40, 66, 88 S.Ct. 1912, 20 L.Ed.2d 917; United States v. Soyka, 2 Cir., 1968, en banc 394 F.2d 443, 453, cert. den. 393 U.S. 1095, 89 S.Ct. 883, 21 L.Ed.2d 785; Hinton v. United States, 1969, 137 U.S.App.D.C. 388, 424 F.2d 876, 879.

Probable cause to arrest must not be confused with the quantum of evidence required to establish guilt. Judged in the light of their experience and training the circumstances of this case disclosed probable cause for reasonable, cautious, prudent peace officers to make a warrantless arrest. Bailey v. United States, 1967, 128 U.S.App.D.C. 354, 389 F.2d 305.

The judgment of the District Court is affirmed.

Affirmed.