**UNITED STATES of America,**
**Plaintiff-Appellee,**
**v.**
**Willie A. SHARPE, Defendant-Appellant.**
**No. 15129.**

United States Court of Appeals
Sixth Circuit.
Aug. 30, 1963.

**118**

Edward L. Douglas, Detroit, Mich., for appellant.

Milton J. Trumbauer, Jr., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before WEICK, Circuit Judge, and KENT and FOX, District Judges.

PER CURIAM.

Shortly before noon on Wednesday, November 15, 1961, Agent Edmund Irvin, of the United States Bureau of Narcotics, received an anonymous telephone call from an unidentified female.

The informant told Officer Irvin she was an ex-girl friend of Willie Sharpe (aka Churchill). She claimed Sharpe was then selling heroin in capsule form out of his apartment, No. 14, at 4825 Brush Street, in Detroit, Michigan.

She gave a description of Sharpe and his telephone number. The telephone number and the address were verified by Agent Irvin.

On the same day, Agents Irvin and Robert David went to 4825 Brush Street. They entered the apartment building and posted themselves on the stairway one floor above the entrance to Apartment 14.

From this vantage point they observed what they termed several suspected addicts entering and leaving apartment No. 14. The agents went to the back of the apartment building and watched the kitchen door into apartment 14. Shortly thereafter they saw two suspected addicts entering and leaving the apartment's kitchen door.

Following this, the Agents approached the vicinity of the kitchen door and saw two garbage cans, one directly behind the door leading into Apartment 14. Agent Irvin looked into this garbage can and found several empty No. 5 pink gelatin capsules, a pin and an empty box of No. 5 gelatin capsules, together with a hypodermic needle. These, according to the testimony of the narcotics officers, are common utilities of the heroin trade.

On November 16, at about the same time as the preceding day, Agent Irvin received another telephone call from the same unidentified female.

She informed Irvin that Willie Sharpe was to leave his apartment with a quantity of heroin, which he was to deliver at approximately noon, and that he usually travelled by jitney or cab.

Some time shortly after noon, the Agents saw a man fitting "the description provided by the unknown person on the telephone, leaving the rear door of Apartment 14, descending to the ground, and walked over to Hancock, where he entered a cab and was lost from sight." (Tr. 20)

On November 17, after midnight, about 1:00 or 1:30 in the morning, Agents Irvin and David returned to a surveillance of 4825 Brush Street. They saw several persons entering and leaving the back door of Apartment 14, and they stopped one of them. However, this person ran away, dropping a hypodermic needle and an eyedropper. These, according to the officers' testimony, are also common instruments used by addicts.

The Narcotic Agents then approached the back door of Apartment 14 and after listening, heard two separate voices speaking the vernacular common to the narcotics trade. The Agents were unable to identify either of the voices.

On the morning of November 17, Narcotics Agent Irvin arrived at his office in the Federal Building around 10:00 or 10:15. He received another telephone call from the same unidentified female. She stated that Sharpe was "now capping up, and would, approximately by noon, be rid of the heroin, or the stuff." (Tr. 25)

Agent Irvin received this call at about 10:30.

Next, Agents Irvin and David "proceeded to the area where we were joined by officers of the Detroit Police Department" (Tr. 26), who were contacted after the Agents reached the apartment area.

The officers reached the apartment building after 11:00 A.M.

The Federal Narcotics Agents and members of the Detroit Police Department entered the apartment building at 4825 Brush Street and approached the front door of Apartment 14. Their purpose was to place Willie Sharpe under arrest for possession of narcotics.

When the Agents and officers heard voices inside, Agent Irvin knocked on the door. He declared: "Irvin, Federal Narcotics Agent."

Next, there was a noise near the door and then the statement from within, "Quick, the back door."

Straightway Agent Irvin forcibly entered the apartment.

Upon entering, Agent Irvin went into the kitchen and placed Willie Sharpe, Charles Davis and Jonnie Mae Hill under arrest.

Willie Sharpe was at a small kitchen table, on which there was a plate and a quantity of white powder, later identified as heroin.

Appellant states the questions involved to be:

(1) Whether there can be a valid arrest without a warrant by federal officers in the absence of the requirements of stating their identity and purpose for demanding admission prior to breaking into a private dwelling, and whether the evidence seized in the search incident to such an arrest be admissible?

(2) Do the facts and circumstances in this case which tend to "verify" the information received by federal officers from an anonymous source, constitute probable cause for the arrest of the defendant without a warrant?

On the question of validity of arrest and search and seizure, the issue is the same: Did the officers act reasonably under the facts and circumstances in this case? For only unreasonable arrests or searches and seizures are illegal.

District Judge Ralph M. Freeman in his opinion on the issue of whether or not the evidence should be suppressed, correctly states:

"In other words, it appears from the decisions that probable cause does exist where information has been received from an informer whose identity is unknown, if there has been some corroboration or verification of the information sufficient to give some reliability or substantial basis for accepting the hearsay information as the truth.

\* \* \* \* \* \*

"I think this is a close case, a close situation; but I am of the opinion that the information submitted here by an unknown person, whose identity only was that she was an ex-girl friend of the defendant Sharpe, was tested on two occasions before the date of the arrest. Her information as to the premises in question was correct, the apartment was correct, the telephone number was correct. The agents found evidence of equipment used in the narcotic trade in the trash can immediately in the rear of the premises. Persons were seen to both enter and leave the premises at very unusual hours, early in the morning. I place considerable reliance upon an incident which occurred while the officers were making surveillance on the early morning of the date when a person who left this apartment ran when the officers attempted to talk with him, and he dropped an eye dropper and hypodermic needle, which are used in the narcotic trade. All of these things tended to give some verification to the information received by the officers from this female person. That information, as so verified, coupled with the observations the officers made on the three dates in question, November 15, 16 and 17, together

with the articles they found in the trash can, and the articles dropped on the street by a person who had just left the premises, he dropped something on the street, and also the conversation that was heard inside the apartment just immediately before the apartment was entered,— all of this the court believes constituted reasonable grounds to believe that the defendant Sharpe was violating the narcotic laws." (Tr. 106–107)

The principal issue in this case is whether Agent Irvin substantially complied with the requirements of declaration of identity and purpose for arrest without a warrant. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

█ It is a reasonable conclusion that a declaration of purpose was implicit in the declaration of identity.

Agent Irvin declared, "Irvin, Narcotics Agent." Immediately there was a noise near the door; the occupants obviously comprehended the Agent's purpose, for then followed the words, "Quick, the back door."

This presented a circumstance which called for quick action by the officers to avoid the peril of destruction of evidence. To immediately, straightway and forcibly enter was a reasonable action consonant with the officers' duty under the circumstances. Ker v. State of California, supra.

Whether this be classed as an exigent circumstance excluding compliance with a specific declaration of purpose, or was in fact a substantial compliance because the occupants comprehended the purpose from Agent Irvin's declaration of identity, is a question of classification.

However, under either classification the actions, the forcible entry and subsequent arrest by the officers, were reasonable. Miller v. United States and Ker v. State of California, supra.

Therefore, neither federal nor state law, statutory, decisional or common law, was violated by the officers in this case.

█ There was substantial evidence to support the finding of District Judge Freeman that there was probable cause for the arrest of Sharpe without a warrant. His arrest was therefore valid and the subsequent search which was incident thereto was likewise valid. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; 26 U.S.C. § 7607(2).

The present case is not like United States v. Harris, 321 F.2d 739 (C.A.6), which involved different facts and questions. There the arrest was found to be a mere subterfuge for the search and hence the search was not an incident.

The District Court is affirmed.