William E. HAGAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19623.

United States Court of Appeals District of Columbia Circuit.

Argued March 17, 1966.

Decided June 28, 1966.

Petition for Rehearing En Banc Denied Sept. 28, 1966.

---

Mr. Albert L. Ledgard, Jr., Washington, D. C., with whom Messrs. Norman M. Glasgow and Lowell E. Baier, Washington, D. C. (all appointed by this court) were on the brief, for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, DANAHER and WRIGHT, Circuit Judges.

BAZELON, Chief Judge:

The principal claim in this appeal from conviction under the federal narcotics laws is that the District Court erred in refusing to suppress narcotics found on appellant's person at the time of his arrest.

On September 17, 1964, the police applied to the United States Commissioner for a warrant authorizing a search of appellant's apartment. The affidavit in support of this application recited that two informants, who had previously been found reliable, had told the police that appellant was selling narcotics from his apartment. The affidavit also described in great detail a sale of narcotics made by appellant, and witnessed by police, to one of the informants earlier that day. Finally, the affidavit recounted several other corroborating details which sustained the police's belief "that there is now illicit narcotic drugs being secreted inside of [appellant's apartment] * * *."[1]

A search warrant was issued for the premises described in the affidavit. In the course of executing the warrant on its date of issue, the police seized some capsules thought to contain narcotics and arrested one of the occupants of the apartment, known to them as a narcotics

---

1. The affidavit is reproduced as an appendix to this opinion.

user, under the Narcotic Vagrancy Act. D.C.Code § 33–416a (1961). Thereafter one of the officers noticed "tracks or needle marks" on appellant's arm. The officer asked appellant "if he used drugs now. He stated that he had." Appellant was thereupon arrested under the Narcotic Vagrancy Act and searched. The search produced the narcotics which the District Court refused to suppress. Appellant was then rearrested for a Harrison Act violation which led to the conviction under review.

■■ Appellant's main contention is that the search of his person violated his Fourth Amendment rights since it was not incident to a·valid arrest.[2] He claims the arrest was unlawful because the police, by eliciting the incriminating statement that he was a user of narcotics, violated the constitutional standard set forth in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). According to appellant, once the police had focused their investigation on him, they were required as a minimum to warn him of his constitutional rights to silence and to counsel before they could ask him any questions. Appellant concludes that since the police failed to caution him, their knowledge of his use of narcotics was the "fruit" of a violation of his constitutional rights and could not furnish probable cause for an arrest under the Narcotic Vagrancy statute.

■ We do not reach this *Escobedo* argument[3] since the police had a wholly independent source of knowledge of probable cause to justify their initial arrest of appellant, namely, the sale of narcotics described in their affidavit.[4] Appellant contends that this sale cannot be used to support the arrest because the police failed to secure an arrest warrant despite ample opportunity to do so. Since there was no emergency or other extenuating circumstances to excuse the failure to obtain the independent judgment of a neutral judicial officer, appellant argues his arrest was "unreasonable" under the Fourth Amendment. On the particular facts of this case we disagree.

First and most important, this was not a case where the police invaded a private dwelling without a warrant of any kind in order to search or arrest. Here the police were armed with a valid search warrant, issued by a magistrate upon a showing of probable cause. Thus their entry into the apartment was lawful, and the integrity and. privacy of appellant's home was protected according to the command of the Fourth Amendment. This fact distinguishes this case from the many which have struck down warrantless arrests following police entries into homes without any warrant.[5]

The only privacy which was here invaded without the desirable safeguard of a warrant was that of appellant's person,

---

2. Appellant also challenges the sufficiency of the affidavit and the manner in which the police entered his apartment. We find no reversible error in the District Court's findings that the affidavit revealed adequate probable cause to support the search warrant and that the police announced their presence and purpose before peacefully entering the apartment. Compare, *e. g.*, Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949).

3. See generally Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (U.S. June 13, 1966).

4. See, *e. g.*, Lawton v. Dacey, 352 F.2d 61 (1st Cir. 1965). Cf., *e. g.*, Go-Bart Im-

porting Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Willis v. United States, 106 U.S.App.D.C. 211, 271 F.2d 477 (1959), cert. denied, 362 U.S. 964, 80 S.Ct. 881, 4 L.Ed.2d 879 (1960).

5. See, *e. g.*, Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Gatlin v. United States, 117 U.S. App.D.C. 123, 128 n. 10, 326 F.2d 666, 671 n. 10 (1963); Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449 (1958); Accarino v. United States, supra note 2. Cf. District of Columbia v. Little, 85 U.S.App.D.C. 242, 178 F.2d

the identical interest that is involved in warrantless arrests in public places. We recently considered the constitutional requirements for such arrests in Ford v. United States, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965). We there held that a warrantless arrest on the street for a felony was valid despite the fact it was practicable to obtain an arrest warrant. We said:

> The protection of the [Fourth] Amendment * * * is to be broadly applied. It embraces arrests, and the test it prescribes is reasonableness. We think this test, considered in light of history, decisional law and statutes, may not appropriately be held by us to depend upon a further test turning upon a decision as to the practicability of obtaining a warrant in case of an arrest in a public place for a felony on probable cause. Such an ingredient of reasonableness has never been adopted by the Supreme Court, and has been implicitly if not explicitly rejected there, by the courts in general throughout our history, and by Congress through enactment of [various] statutes * * *. [352 F.2d at 932–933].

Our sole concern, therefore, is whether appellant's arrest meets the test of reasonableness which, as *Ford* made clear, is the guiding principle of the Fourth Amendment in cases of warrantless arrests. Clearly, at the time of appellant's arrest the police had probable cause to believe that he had committed a felony: in addition to the facts recounted in their affidavit, they had discovered capsules, similar to those used for stor-

ing narcotics and containing traces of white powder, in appellant's apartment. Moreover, there was no evidence that the police had decided to arrest appellant before they entered his apartment. Apparently that decision was made only after execution of the search warrant had led to the discovery of the capsules, thereby supplying additional probable cause to believe that appellant had violated the law[6] Finally, there was no unnecessary or unexplained delay between the events activating police suspicion and the arrest which might cast doubt on the existence of probable cause.[7] The arrest of appellant under these circumstances, in our opinion, was reasonable and thus did not violate the Fourth Amendment.

We think it desirable, however, to repeat our caution in *Ford* that:

> [T]he practice of arresting without a warrant when it is practicable to obtain one is not to be encouraged. On the contrary. In a doubtful or marginal case of probable cause an arrest may be sustainable on a warrant where without one it would fall. And in any event the intervention whenever practicable of the independent judgment of a magistrate should be sought. [352 F.2d at 933. Footnote omitted].

We have considered the other contentions advanced but find no reversible error.

Affirmed.

### APPENDIX

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A U. S. COMMISSIONERS SEARCH WARRANT for

---

13, 13 A.L.R.2d 954 (1949), aff'd on other grounds, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950).

Since these cases involved invasions of the privacy of the home, as well as of the individual, without the prior approval of a magistrate, a much stricter standard of reasonableness under the Fourth Amendment was required. See Ford v. United States, 122 U.S.App.D.C. 259, 262–264, 352 F.2d 927, 930–932 (1965).

6. These facts distinguish the case from one where the police use a warrant authorizing a search for some object as a pre-

text for searching for a person whom they wish to arrest without a warrant and whom they believe to be within a particular dwelling. The latter case raises issues of abusive use of a warrant and of unauthorized general searches which are not presented on this record.

7. See, e. g., Irby v. United States, 114 U.S. App.D.C. 246, 314 F.2d 251 (1963), where both the majority and dissenting opinions indicated that this factor has some bearing in determining whether probable cause existed.

the premises 3206 8th Street NE, Washington, DC, entire apartment #1 occupied by William E. Hagan.

Prior to September 17, 1964 Detective Paul received information from a previous reliable source of information who states that it was buying capsules of heroin from William E. Hagan at premises 3206 8th Street NE, Apartment #1. This source further advised that it had last purchased heroin from Hagan during the week of August 30, 1964.

On September 16, 1964 Detectives Paul and MacKinnon met a second previous reliable source of information who stated that it was buying heroin from William E. Hagan at 3206 8th Street NE, Apartment #1. This source further advised that it contacted Hagan by dialing 5260215, and that it had been buying heroin from Hagan for the past eight months. The source further advised that when it wanted to buy heroin it called Hagan at 5260215 and that Hagan either told the source to come to the house at 3206 8th Street NE or told the source to meet him (Hagan) at a designated location. The source further advised that Hagan was driving a black auto with Virginia License tags.

On September 17, 1964 the second source of information dialed 5260215 under the observation of Detective Paul. A male voice answered the phone and the source stated that it wanted to buy some heroin. The voice told the source to meet him at 7th and Massachusetts Avenue NW. The source then hung up the phone and advised Detective Paul that the male voice on the phone was Hagan.

On September 17, 1964 the second source of information was searched and was found to be free of any money or narcotic drugs. Detective Paul gave the source a sum of MPDC advance funds,

and drove the source to the vicinity of 7th and Massachusetts Avenue NW, where the source left the officers auto. Detectives Paul and MacKinnin secreted themselves where they could keep the source under constant observation. After a period of time the officers observed a late model black car with Virginia tags A418–045 pull to the curb in the 600 block of Massachusetts Ave. NW, with William Hagan at the wheel. The source walked over to the auto and leaned into the open window. The source then walked away from the auto, and the car drove off. The source rejoined the officers at which time it turned over to Detective Paul a quantity of capsules of a white powder. The source advised the officers that it had given the MPDC advance funds to Hagan and that Hagan in turn handed the capsules to the source. The source identified MPDC photo #98438 as being that of William E. Hagan.

Detective Paul performed a preliminary field test on the white powder in one of the capsules and received a positive color reaction indicating the presence of a narcotic drug of the opiate group.

Investigation reveals that Virginia tags A418–045 is listed to a William E. Hagan.

The phone 5260215 is listed to Mrs. Lil L. Hagan at 3206 8th St. NE.

William Hagan has previously stated to Detective Paul that he lived in Apt. #1 of 3206 8th Street NE with his wife Lil.

Because of the information received from the two previous reliable sources of information along with the events of September 17, 1964, the undersigned officer does believe that there is now illicit narcotic drugs being secreted inside of 3206 8th Street, NE, Apt. #1 by William E. Hagan.