STATE OF CONNECTICUT *v.* JOSEPH ROSE, JR.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued February 4—decision released June 24, 1975

*Ralph F. Scofield,* special public defender, for the appellant (defendant).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. In 1968, the defendant was convicted, on a trial to the jury, of having heroin under his control in violation of Public Act No. 555, adopted in the 1967 session of the General Assembly. See General Statutes § 19-481. He was also found guilty of being an habitual offender under the provisions of what was then § 54-121 of the General Statutes. He appealed from the judgment assigning error in (1) the denial of his motion to suppress evidence; (2) certain rulings on the admissibility of evidence; (3) the denial of his motion for a mistrial; (4) the denial of his motion to dismiss the habitual offender part of the information; and (5) the sentence imposed.

At the hearing on his pretrial motion to suppress and on this appeal, the defendant has claimed that the affidavit in support of the application for a warrant to search an apartment at 584 Berkshire Avenue in Bridgeport, prepared by the police and submitted to a judge of the Circuit Court *(Eielson, J.)* on December 28, 1967, did not support a finding of probable cause to believe that evidence of criminal activity existed within the apartment alleged by the affiants to be premises where such

evidence was concealed. The defendant asserts that the judge acted improperly in issuing the search warrant, and that under the provisions of the fourth amendment to the constitution of the United States as applied to the states by the fourteenth amendment, his motion to suppress should have been granted and the items seized in that apartment pursuant to the authority of the warrant should not have been admitted in evidence.

Specifically, the defendant contends that the affidavit supporting the application for the search warrant does not contain any facts which connect the asserted illegal activity with the apartment sought to be searched. The application for the warrant was predicated upon information supplied to the police by two informants whom they represented to be reliable. In the first two paragraphs of the affidavit and application for the warrant the apartment to be searched and in which it was complained that narcotic drugs and paraphernalia were located was specifically described as "[a] 3 story dwelling, with grey imitation brick siding, the 1st floor apartment on the right side front numbered 584 Berkshire Ave., Bridgeport, Conn." After reciting that one of the reliable informants had stated that Rose bought heroin out of town, mixed it with sugar, packaged it in small white packets, scotch taped it, and sold it to addicts, the affidavit then described the paraphernalia used by Rose and stated: "These items are kept in a closet just right of the entrance door to the apartment." This reference to "the apartment" is the first reference to any apartment after the specific earlier description of the apartment at 584 Berkshire Avenue, Bridgeport, for which the search warrant was sought. Clearly the premises to be searched and the illegal activity

being conducted on those premises by Rose were sufficiently identified to support the issuance of the search warrant.

As Justice Goldberg said in *United States* v. *Ventresca,* 380 U.S. 102, 108–09, 85 S. Ct. 741, 13 L. Ed. 2d 684, referring to the historical development of constitutional standards in the area of search and seizure: "These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar* v. *Texas,* . . . [378 U.S. 108, 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723]. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circum-

stances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

This court has also had occasion to observe: "The principles by which we test the adequacy of an affidavit have been designed to insure that a disinterested judicial officer make his own commonsense judgment that there is probable cause for the issuance of the warrant. *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637; *Aguilar* v. *Texas,* 378 U.S. 108, 110–11, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *State* v. *Jackson,* 162 Conn. 440, 444, 294 A.2d 517." *State* v. *Grayton,* 163 Conn. 104, 106, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; see also *State* v. *Saidel,* 159 Conn. 96, 98, 267 A.2d 449.

Keeping in mind the fact that the reviewing court may consider only information brought to the issuing judge's attention; *Aguilar* v. *Texas,* 378 U.S. 108, 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *Giordenello* v. *United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503; we conclude that the judge issuing the warrant, taking this commonsense approach, could reasonably and logically find that there was probable cause to search the apartment specified in the warrant and to issue the warrant. In view of the contrary conclusion reached in the dissenting opinion, we have printed in full the affi-

davit and application[1] for the search and seizure warrant on the basis of which the warrant was issued.

The defendant next contends that the judge who issued the search warrant could not have reasonably found probable cause to issue it because the

[1] "Affidavit and Application
Search and Seizure Warrant
CCT-7A Rev. 3-66

STATE OF CONNECTICUT
CIRCUIT COURT

TO: A Judge of the Circuit Court

The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Narcotic Drugs, Dangerous Drugs, and Narcotic Paraphernalia is possessed, controlled, designed or intended for use as a means of committing the crime of Possession and control of narcotic drugs in violations of Public Act #555

And is within or upon a certain person, place, or thing, to wit . . . A 3 story dwelling, with grey imitation brick siding, the 1st floor apartment on the right side front numbered 584 Berkshire Ave., Bridgeport, Conn. and Joseph Rose a white male age 46, 5'6", 155 lbs. And that the facts establishing the grounds for issuing a Search and Seizure Warrant are the following

1. Det. William Brackett a regular member of the Bridgeport Police Dept. for the past 16½ years, presently assigned to the Special Service Division for the past 13 months.

2. Det. Frank Kapostas a regular member of the Bridgeport Police Dept. for the past 16½ years, presently assigned to the Special Service Division for the past 2 years.

3. Dets. Brackett & Kapostas have participated in numerous narcotic arrests and investigations.

4. On December 19, 1967, Dets. Brackett & Kapostas received reliable information from a confidential informant. This informant has given information in the past that has led to the arrest of 7 people, 3 of these received convictions and the other 4 are still pending court trial.

5. The reliable informant came to the offices of Special Services and informed Dets. Brackett & Kapostas that Joseph Rose was a supplier of Heroin in large quantities and he in fact supplies heroin to the small heroin pushers around the city of Bridgeport.

6. A check with Central Records Division in the Bridgeport

affidavit supporting the application for the warrant did not state the date on which the informant made his observations of narcotic activity. In support of this contention, the defendant relies primarily on *Rosencranz* v. *United States*, 356 F.2d 310 (1st Cir.). In the first place, this reliance is misplaced. The

Police Dept. reveals that Joseph Rose has a very lengthy police record and is presently on parole.

7. December 28, 1967 a reliable and confidential informant came to the offices of Special Services to give information on the actions of Joseph Rose. This informant has given information in the past that has led to the arrests of 4 people, 1 of which is serving a long sentence in Conn. States Prison.

8. This informant stated to Dets. Brackett & Kapostas that Joseph Rose has pushers working for him that are selling large amounts of Heroin.

9. The informant also stated that Rose buys Heroin at 86% pure out of town then mixes this with Milk Sugar. With this mixture of Heroin and Milk Sugar it is then packaged in small white packets, scotch taped, and sold to the addict for the sum of $6.00.

10. The informant further stated that he was present during the time when Rose was making this mixture and small $6.00 packets. Used during this processing is a large mirror, nylon stockings (for Sifting), tea spoons, white paper, and rubber bands. These items are kept in a closet just right of the entrance door to the apartment.

11. During the month of December 1967 Dets. Brackett & Kapostas observed Joseph Rose in the company of a known narcotic pusher in the vicinity of Beardsley Ter. Apts.

12. Based on the information received, observations, Training and Experience of the officers, their knowledge that a crime is being committed, it is believed that they have established probable cause that the crime of Public Act #555 of the Connecticut General Statutes is being committed.

13. This application has not been presented to any other judge. The undersigned has not presented this application in any other court or to any other judge.

Wherefore the undersigned prays that a warrant may issue commanding a proper officer to search said person or to enter upon said place or thing, search the same, and take into custody all such property.

Signed at Bridgeport, Connecticut
 this 28 day of December, 1967   Det. Frank Kapostas

Signed at Bridgeport, Connecticut
 this 28 day of December, 1967   Det. William Brackett"

determinative issue in *Rosencranz* was not the date the informant made the observations of suspected criminal activity but rather the date when he related these observations to the affiant-police officer. Id., 315. In the present case, the dates on which the Bridgeport police received the information from each of two different informants is stated. While there is no fixed test for finding the existence of probable cause, proof of its existence must include facts so closely related to the time of the issuance of the warrant as to justify a finding of the existence of probable cause at that time. "The facts and circumstances set forth in an affidavit submitted in support of the issuance of a search warrant should be current and timely, so as to indicate that the premises, person, place or thing to be searched presently contains the fruits of the crime." Markle, "The Law of Arrest and Search and Seizure," p. 223. An exception to this rule is where the court finds facts indicating the likelihood that there is a continuing criminal activity. *United States* v. *Mustone,* 469 F.2d 970 (1st Cir.); *United States* v. *Johnson,* 461 F.2d 285 (10th Cir.); *State* v. *Austria,* 55 Haw. 565, 524 P.2d 290; *Johnson* v. *State,* 14 Md. App. 721, 288 A.2d 622; note, 100 A.L.R.2d 525, 542; Markle, supra, 226. The facts indicating this continuity must satisfy the same requisites of reliability as other facts within the affidavit that purport to evidence probable cause. Whether the proof meets this test must be determined by the circumstances of each case. *Sgro* v. *United States,* 287 U.S. 206, 211, 53 S. Ct. 138, 77 L. Ed. 260; *State* v. *DeNegris,* 153 Conn. 5, 8–9, 212 A.2d 894. The basic criterion as to the duration of probable cause

is the inherent nature of the crime. *Bastida* v. *Henderson,* 487 F.2d 860, 864 (5th Cir.). As the court there noted: "The circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." In the present case, the facts recited in the affidavit disclose that the defendant received 86 percent pure heroin from out of town, diluted it with milk sugar and packaged it in smaller packets in his apartment for later distribution. From such a portrayal of ongoing criminal activity, presented to the officers by two different informants, one nine days before the warrant was issued and the other only the day preceding the application for the warrant, the issuing magistrate could reasonably conclude that probable cause existed at the time the warrant was issued.

The defendant next attacks the affidavit asserting that it lacked sufficient corroboration of the informants' statements. In support of his position, he cites *Aguilar* v. *Texas,* supra, 114, which stated that "[a]lthough an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U.S. 257, [80 S. Ct. 725, 4 L. Ed. 2d 697] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' "

The affidavit presented by Detectives Frank Kapostas and William Brackett of the Bridgeport police department contained information from two informants which information was in the form of underlying facts and not conclusions. Each informant was represented as being known to the affiants and as reliable, having given information which led to previous convictions. Each informant's report in the affidavit provides important corroboration of the other's information. In addition, the detectives investigated and discovered that the defendant had a lengthy police record and was on parole at the time. Further, the detectives themselves observed the defendant in the company of a known narcotics pusher during the month preceding the issuance of the search warrant. The information in toto was clearly sufficient and satisfied the requirements specified in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, and *State* v. *Grayton,* supra, 107. The attack on the sufficiency of the affidavit is without merit.

The defendant next claims error in the conclusion of the trial court that the search and seizure warrant was legal, asserting that there is no indication in the transcript or record that the court in fact examined the warrant. The absence of such an indication is, however, not conclusive on the question of whether the court did in fact examine the warrant itself, and none of the defendant's attacks on the search has been directed at the contents of the warrant itself. Rather, they all go to contest the sufficiency of the information contained in the affidavit and application for the warrant, and we have found all of these attacks to be without merit. Furthermore, the defendant has not attacked the finding of the court that the warrant was issued "to

search for and seize narcotic drugs, dangerous drugs and narcotic paraphernalia" and that such articles were in fact seized as a result of the search.[2]

The defendant next claims that he did not receive a fair trial and that there was error in denying his motion for a mistrial. The motion for a mistrial was made after the court through its own questions elicited from a witness, Sergeant John Sember of the Bridgeport police department, that in his opinion the approximate value of the heroin in one of the packages seized in the defendant's apartment was $11,000. The basis for the motion was a claim that this testimony was irrelevant to the crime charged, speculative on the part of the witness in that it had no basis in the facts then in evidence, and was inflammatory and prejudicial to the defendant. In addition, the defendant asserts that the witness' valuation of the heroin was based on the assumption that it was pure heroin, a fact not in evidence. Subsequent to this testimony, the state toxicologist testified that the substance seized from the defendant's apartment was not pure heroin but was at least eighty percent milk sugar. He estimated the value of the heroin seized at several hundred dollars. Thereafter, the court struck the testimony of Sergeant Sember concerning his valuation of the heroin and in no uncertain terms instructed the jury to disregard it totally.

[2] The finding of the court was that as a result of the search the following items were seized: "One full can of Lactose U.S.P. powder (milk sugar). One blue tissue paper which was found with the works wrapped in it. One large package of suspected pure heroin. One medium size package of suspected pure heroin. Two small packs or decks of suspected heroin. Two plastic pouches of traces of suspected heroin. One bottle cap cooker with small cotton swatch residue of suspected heroin. One hypodermic syringe, four B & D No. 26 needles, 22 empty glassine envelopes, 11 assorted size white linen paper commonly used for packaging small packs or decks of heroin, and one Holland Linen paper pad."

It is well established that "a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial and the whole proceedings are vitiated." *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433; *State* v. *Leopold,* 110 Conn. 55, 60, 147 A. 118; see also *Goggins* v. *Reinzo Trucking Co.,* 166 Conn. 240, 250, 348 A.2d 569; *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221. The court has wide discretion in passing on motions for mistrial. *Ferino* v. *Palmer,* supra. In light of the court's careful and explicit instructions to the jury when it discovered the possibility that irrelevant and mistaken testimony had been given, we can find no abuse of its discretion in the denial of the defendant's motion for a mistrial.

The defendant next assigns error to several evidentiary rulings made by the court during the course of the trial. He first claims error in the admission of physical and testimonial evidence based on the claim that this evidence was the product of an illegal search and seizure. Having determined that the search and seizure was lawful and constitutional, it follows that evidence which resulted from that search was clearly admissible.

The defendant also assigns error to the rulings of the trial court sustaining the state's objection to certain questions propounded during cross-examination of witnesses by the defendant's counsel. These questions attempted to elicit from police officers, who had taken part in the search of the defendant's apartment, testimony concerning the defendant's wife's involvement with the narcotics which were found there. The state objected on the grounds of irrelevance and its objections were sustained.

The defendant argued that he was entitled to present evidence, as an alternative explanation for the presence of the drugs, that the narcotics in his apartment were his wife's and not his.

The trial court has broad discretion in determining the relevancy of evidence. *Johnson* v. *Newell,* 160 Conn. 269, 276, 277, 278 A.2d 776; *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455; *State* v. *Smith,* 157 Conn. 351, 355, 254 A.2d 447; *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied, sub nom. *State* v. *Joseph,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557. "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639; *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444." *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715. The trial court has wide discretion as to the scope of cross-examination as well. *State* v. *Brathwaite,* 164 Conn. 617, 619, 325 A.2d 284. In view of the fact that only the defendant was on trial

and not his wife, and that there had been no mention on direct examination of his wife's connection with the narcotics seized, we conclude that the trial court did not abuse its discretion in ruling as it did. The finding clearly indicates that the defendant did introduce evidence in his offers of proof that his wife was an addict, had used heroin, and had used a set of works similar to that seized from his apartment.

The defendant also assigned as error the court's denial of his motion to dismiss the habitual offender portion of the information which alleged that he had twice before been convicted, sentenced and imprisoned in the state prison. The charge was made pursuant to the provisions of § 54-121 of the 1958 Revision of the General Statutes which prescribed indeterminate sentences to the state prison "provided, when any person so sentenced has twice before been convicted, sentenced and imprisoned in a state prison or penitentiary, the court shall sentence such person to a maximum of thirty years." It is the defendant's claim that the statute was unconstitutional because it violated the equal protection clause of the United States constitution and the imposition of the prescribed sentence amounted to cruel and unusual punishment. In *State* v. *Mead*, 130 Conn. 106, 109, 32 A.2d 273, and *State* v. *Grady*, 153 Conn. 26, 35, 211 A.2d 674, we decided against the validity of just such contentions and there is no need to repeat what we said there. Neither the record in this case nor the passage of time since our decisions in those cases persuades us to a result different from that reached in those cases.

The defendant's final assignment of error is addressed to the sentence imposed by the trial court.

It is his claim that the severity of the sentence imposed appears to have been influenced by a mistake on the part of the court as to the amount of heroin found in the defendant's apartment. In its remarks at the time of imposing sentence, the court attempted to calculate the value of the heroin seized. It appears that in doing so the court based its calculations on the mistaken assumption that there are 479 grams in an ounce. The defendant was sentenced to not less than ten years nor more than thirty years in the Connecticut state prison. The thirty-year maximum term was mandated under § 54-121 as it applied to habitual offenders. The ten-year minimum term was the maximum term then prescribed for a first offense under § 37 (a) of the 1967 Public Acts, No. 555 (now General Statutes § 19-481 [a]). 1969 Public Acts, No. 753, § 19, decreased the maximum term for a first offense from ten to five years.

The sentence as imposed was within the limits fixed by statute for the offense charged. We have no discretionary power in such a case except where a trial court appears to have abused its discretion. *State* v. *LaPorta,* 140 Conn. 610, 612, 102 A.2d 885; *State* v. *Van Allen,* 140 Conn. 39, 44, 97 A.2d 890; *State* v. *Horton,* 132 Conn. 276, 278, 43 A.2d 744. That does not appear to be the case here. Two other factors are also of significance. First, it does not appear that the present claim was ever made to the trial court at the time of sentence. See Practice Book § 652; *State* v. *Malley,* 167 Conn. 379, 386, 355 A.2d 292, and cases cited therein. Second, although the defendant on appeal assigned as error the comments of the court and the imposition of the sentence to which objection is now pressed, the court refused to make any corrections. Inherent in the present

argument of the defendant is an assumption that despite the court's refusal to make any change in the sentence as imposed that sentence was predicated solely on the court's misconception of the quantity of heroin found in his possession. This assumption is unwarranted in view of the information obtained by the court during the trial and that made available to it in the report submitted before sentence by the adult probation office. See General Statutes § 54-109. Of particular relevance in consideration of the penalty imposed is the information submitted to the court that on September 27, 1945, the defendant had been convicted of robbery with violence and sentenced to prison for a term of not less than five years nor more than seven years and that on October 27, 1955, he was convicted of the crimes of robbery with violence, breaking and entering with violence and escape (from jail) with violence and sentenced to prison for the term of not less than twelve years nor more than twenty-five years. These convictions and sentences were proper for the consideration of the court not only in fixing the maximum sentence under the habitual offender statute but in fixing the minimum sentence. If the defendant were of the opinion that his sentence should have been reconsidered, his remedy was by application to the review division of the Superior Court in accordance with the provisions of §§ 51-194 through 51-196 of the General Statutes. See *Kohlfuss* v. *Warden,* 149 Conn. 692, 697, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235.

There is no error.

In this opinion LOISELLE and LONGO, Js., concurred. BOGDANSKI, J., concurred in the result.

COTTER, J. (dissenting). I cannot agree that the affidavit supporting the warrant in this case meets constitutional requirements.

The function of the court reviewing the propriety of the action of the judge or magistrate who issues a warrant to search specific premises for contraband is to determine whether there were facts sufficient to justify his independent determination that the contraband was probably in the premises described by the affiants as the place to be searched. *Rugendorf* v. *United States,* 376 U.S. 528, 533, 84 S. Ct. 825, 11 L. Ed. 2d 887; *Jones* v. *United States,* 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697. A search warrant is issued upon a sworn affidavit establishing the grounds for its issuance, and the reviewing court may consider only information brought to the issuing judge's attention. *Aguilar* v. *Texas,* 378 U.S. 108, 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *Giordenello* v. *United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503. That affidavit must contain a sufficient description of the place that is to be searched, for in determining what is probable cause to issue a search warrant, "[w]e are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched." *Dumbra* v. *United States,* 268 U.S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032. As the United States Supreme Court has said, "the issue in warrant proceedings is . . . probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises." *United States* v. *Harris,* 403 U.S. 573, 584, 91 S. Ct. 2075, 29 L. Ed. 2d 723. I cannot agree that the affidavit in this case in support of the application for the warrant to

search the apartment in question at 584 Berkshire Avenue established the existence of probable cause to believe that evidence of criminal activity was concealed within that apartment. Accordingly, the Circuit Court judge acted improperly in issuing the warrant, and under the fourth and fourteenth amendments to the United States constitution the defendant's motion to suppress should have been granted and the items subsequently seized pursuant to the authority of the warrant should not have been admitted in evidence.

## A

The affidavit was constitutionally defective for failure to meet the dual standards of sufficiency set forth by the United States Supreme Court in *Aguilar* v. *Texas,* supra, typically referred to as "Aguilar's two-pronged test." *United States* v. *Chavez,* 482 F.2d 1268, 1270 (5th Cir.) ; see *Spinelli* v. *United States,* 393 U.S. 410, 413, 89 S. Ct. 584, 21 L. Ed. 2d 637. Where the information on a particular element, such as the place to be searched, submitted to the judge or magistrate is only derived from an informant's hearsay and not within the personal knowledge of the affiants, the first part of the *Aguilar* test requires that the affidavit disclose particular facts or circumstances which justify concluding that the informant is a reliable or trustworthy person; the second then requires specific facts or circumstances tending to demonstrate that the informant gathered his information in the instant case in a reliable manner. *Aguilar* v. *Texas,* supra, 114; *Spinelli* v. *United States,* supra; *United States* v. *Lopez-Ortiz,* 492 F.2d 109, 114 (5th Cir.), reh. denied, 494 F.2d 1296; *People* v. *Hendricks,* 25 N.Y.2d 129, 133, 250 N.E.2d 323. As applied to the kind of facts presented by this case, the *Aguilar*

test is satisfied only where the affidavit discloses underlying circumstances sufficient to enable the judge or magistrate to assess the validity of the affiant's conclusion that the contraband is where he says it is. *United States* v. *Mulligan,* 488 F.2d 732, 735 (9th Cir.), cert. denied, 417 U.S. 930, 94 S. Ct. 2640, 41 L. Ed. 2d 233; *United States* v. *McCoy,* 478 F.2d 176, 179 (10th Cir.), cert. denied, 414 U.S. 828, 94 S. Ct. 53, 38 L. Ed. 2d 62.

It has been held that a mere recital in the affidavit that the informant has proved to be reliable in the past does not satisfy the requirements of the first part of the *Aguilar* test; rather, the affidavit must demonstrate that the informant has established a reputation for providing accurate information. *United States* v. *Ramirez,* 279 F.2d 712, 715 (2d Cir.), cert. denied, 364 U.S. 850, 81 S. Ct. 95, 5 L. Ed. 2d 74; *State* v. *Dove,* 182 N.W.2d 297, 301 (N.D.).[1] This requirement can be satisfied by evidence in the affidavit that the information provided by the informant in the past was indeed accurate, *Jones* v. *United States,* supra, 271, or that it led to the arrest and conviction of certain individuals. *United States* v. *Acarino,* 408 F.2d 512, 514 (2d Cir.); *United States* v. *Gimelstob,* 475 F.2d 157, 160 (3d Cir.), cert. denied, 414 U.S. 828, 94 S. Ct. 49, 38 L. Ed. 2d 62, reh. denied, 414 U.S. 1086, 94 S. Ct. 606, 38 L. Ed. 2d 491; *United States ex rel. Hurley* v. *Delaware,* 365 F. Sup. 282, 286 (D. Del.);

---

[1] Another statement in an affidavit well recognized as tending to establish the reliability of the informant is one that the informant in providing the information in question was also making a declaration against personal interest. *United States* v. *Harris,* supra, 583; *Agnellino* v. *New Jersey,* 493 F.2d 714, 726 (3d Cir.). The affidavit in this case, however, does not establish that the informant was making such a declaration.

*People* v. *Hendricks,* supra, 133. In this case, however, the evidence offered by the affiants to satisfy the first prong of the *Aguilar* test was the statement that the informant had given information in the past which had led to the arrests of four people, "1 of which [sic] is serving a long sentence in Conn. States Prison." There is no indication, in short, that the information provided by this informant proved to be accurate or that it ever led directly to the conviction of any of the four persons arrested on the basis of this information; the mere fact that one of those persons was "serving a long sentence" does not mean that his conviction was in any way related to the particular arrest triggered by the informant's information. The affidavit, then, failed to establish that the informant had indeed provided accurate information in the past so that the affiants could justifiably conclude that said informant was "reliable."

Even if the affiants' statement could be interpreted as sufficiently demonstrating the reliability of the informant, the second prong of the *Aguilar* test was also left unsatisfied in this case since the affidavit fails to disclose the underlying circumstances from which the informant had inferred that contraband was being kept in a closet just right of the entrance door to the apartment. *Aguilar* v. *Texas,* supra, 113–14; *Spinelli* v. *United States,* supra, 416; *United States* v. *Thompson,* 495 F.2d 165, 168 (D.C. Cir.); *United States* v. *Lopez-Ortiz,* supra, 114; *DeAngelo* v. *Yeager,* 490 F.2d 1012, 1014 (3d Cir.); *State* v. *Rocheleau,* 131 Vt. 563, 569, 313 A.2d 33. The affidavit states that the informant had personally observed the defendant making an illicit mixture of heroin and milk sugar. But nowhere is there any indication as to how the informant learned

that the contraband itself was being kept in a closet next to the entrance door to an apartment. With respect to this allegation made by the informant to the affiants, there was nothing in the affidavit to guarantee that the informant was reporting anything "more substantial than a casual rumor circulating in the underworld." *Spinelli* v. *United States,* supra, 416. There was lacking a statement of the underlying circumstances sufficient to enable the judge to make an independent determination of the validity of the affiants' conclusion that the contraband was where they claimed it was. *United States* v. *Mulligan,* supra; *United States* v. *McCoy,* supra.

## B

Of course, an affidavit may still be found to be constitutionally sufficient where it fails to meet the *Aguilar* tests if the information provided by the informant on the element in question is sufficiently detailed or corroborated to justify a conclusion that it is equally trustworthy as information obtained as a result of strict adherence to *Aguilar*. *United States* v. *Harris,* supra, 584; *Spinelli* v. *United States,* supra, 415, 423–24 (opinion of White, J., concurring); *McCray* v. *Illinois,* 386 U.S. 300, 313, 87 S. Ct. 1056, 18 L. Ed. 2d 62, reh. denied, 386 U.S. 1042, 87 S. Ct. 1474, 18 L. Ed. 2d 616; *United States* v. *Black,* 476 F.2d 267, 269 (5th Cir.); *United States* v. *Marihart,* 472 F.2d 809, 812–14 (8th Cir.). Where there is evidence relied upon by the affiants which corroborates the information provided by the informant to the effect that contraband is concealed in certain specified premises, the issuing judge or magistrate may under most circumstances properly conclude that there is probable cause to believe that the contraband is

indeed in the place to be searched. *United States* v. *Ventresca,* 380 U.S. 102, 110, 87 S. Ct. 741, 13 L. Ed. 2d 684; *Jones* v. *United States,* supra, 269–70; *United States* v. *Sharpe,* 322 F.2d 117, 119–20 (6th Cir.). Where, however, there is no such corroboration, the detail required of the information provided by the informant concerning the place to be searched is that much greater. See, e.g., the affidavit approved in *United States* v. *Harris,* supra, 584 (informant stated that he personally bought illicit liquor on named and described premises, which premises constituted the place that the affiant wished to search); *Rugendorf* v. *United States,* supra, 532 (informant stated he had personally seen contraband fur garments in a particular apartment).

In this case, while there appears to have been evidence tending to corroborate some of the informant's information on the defendant's involvement in criminal activity, the affidavit discloses no corroboration of his information concerning the place to be searched. The sufficiency of the affidavit in this respect, then, rests entirely on the statement that items which the informant claimed he once saw the defendant using to make a mixture of heroin and milk sugar "are kept in a closet just right of the entrance door to the apartment." Despite the constitutional burden which this meagre representation was forced to sustain, the majority conclude that to meet this burden that statement must be read as incorporating the description of the premises at 584 Berkshire Avenue contained in the preliminary statement of the affiants. This doctrine of "incorporation by reference" is invoked primarily only in cases where the actual search warrant issued by the judge is claimed to suffer from too broad a descrip-

tion of the premises to be searched; courts frequently in such circumstances hold that the warrant may "incorporate" the original affidavit of probable cause, but only if the affidavit at a minimum describes the premises with sufficient particularity, and the warrant uses "suitable words of reference" which specifically refer to the affidavit. *Moore* v. *United States,* 461 F.2d 1236, 1238 (D.C. Cir.); *United States* v. *Snow,* 9 F.2d 978, 979 (D. Mass.). Some courts have actually required that there be an express reference in the warrant to the affidavit in order for the warrant to be sustained as constitutionally valid. *United States* v. *Ortiz,* 311 F. Sup. 880, 883 (D. Colo.), aff'd, 445 F.2d 1100 (10th Cir.), cert. denied, 404 U.S. 993, 92 S. Ct. 541, 30 L. Ed. 2d 545; *Huffman* v. *United States,* 470 F.2d 386, 393 n.7 (D.C. Cir.); *United States* v. *Brooks,* 303 F.2d 851, 852 (6th Cir.).

Similarly, courts have allowed a judge or magistrate who issues a search warrant to read an affiant's preliminary statement and subsequent account of supporting facts together in determining whether there is a substantial basis underlying the affiant's claim that there is probable cause to believe contraband is where the affiant says it is. See, e.g., *Jones* v. *United States,* supra, 267–68 n.2, cited with approval, *United States* v. *Harris,* supra, 578, 584; *Smith* v. *State,* 56 Okla. Crim. 103, 105, 34 P.2d 280. However, just as search warrants are held to incorporate properly the information in affidavits of probable cause only by specific references thereto, statements of supporting facts appearing in affidavits of probable cause properly incorporate constitutionally required data such as the description of the place to be searched appearing in the affiant's complaining statement only where specific

words of reference, such as "above described premises" or "above mentioned apartment" are found in the pertinent part of the statement of supporting facts. Ibid. While it is true that the approach to this question adopted in *United States* v. *Meeks,* 313 F.2d 464, 466 (6th Cir.), of allowing some latitude in the manner of reference chosen, has been favored by certain courts, *Clay* v. *United States,* 246 F.2d 298, 303 (5th Cir.), cert. denied, 355 U.S. 863, 78 S. Ct. 96, 2 L. Ed. 2d 69; *Mezzatesta* v. *State,* 166 A.2d 433, 436 (Del.), the affidavit approved in *Meeks* was treated as constitutionally defective by the United States Supreme Court in *Aguilar* v. *Texas,* supra, 120-21 (opinion of Clark, J., dissenting).

Specificity in the words of reference is required so that it is made clear to the judge or magistrate that the informant actually did identify the particular premises sought to be searched as the place where he himself saw the contraband. See *United States* v. *Suarez,* 380 F.2d 713, 714-15 (2d Cir.). Such precision is necessary for the judge to make an independent determination of the existence of a substantial basis in fact to support a reasonable belief that contraband is indeed being concealed in the specific premises which the affiants have described as the place to be searched; *Dumbra* v. *United States,* supra, 441; *Jones* v. *United States,* supra, 271; *United States* v. *Harris,* supra, 584; *United States ex rel. Hurley* v. *Delaware,* supra, 285; *United States* v. *Jennings,* 235 F. Sup. 551-52 (D.C. Cir.), cert. denied, 384 U.S. 943, 86 S. Ct. 1465, 16 L. Ed. 2d 541. The lack of such precision, conversely, increases the risk that the judge will issue a warrant to search constitutionally protected premises named by the police acting not

in reliance upon an actual description of those premises by a reliable informant as the place where the contraband is concealed, or upon their own observations thereof, but upon inadequate information or mere suspicion. See, e.g., *Aguilar* v. *Texas,* supra, 109; *Nathanson* v. *United States,* 290 U.S. 41, 46–47, 54 S. Ct. 11, 78 L. Ed. 159; *State* v. *Campbell,* 282 N.C. 125, 131, 191 S.E.2d 752.[2] Such a risk was present in this case, inasmuch as the testimony at the trial of the police officer who executed the warrant suggested that the apartment which was searched and which was named in the application and in the warrant did not have a closet "just right of the entrance door" as described by the informant. It is because of these factors that the recommended practice is for the affiants to specify in their affidavit that their reliable informant himself identified or described the particular premises sought to be searched. *Rugendorf* v. *United States,* supra, 529–30; *United States* v. *Harris,* supra, 575; *McCray* v. *Illinois,* supra, 302; *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 351, 51 S. Ct. 153, 75 L. Ed. 374; cf. *Dumbra* v. *United States,* supra, 440; *United States* v. *Ventresca,* supra, 108; *Hagan* v. *United States,* 364 F.2d 669, 673 (D.C. Cir.), cert. denied, 386 U.S. 445, 87 S. Ct. 929, 17 L. Ed. 2d 875; *Martinez* v. *State,* 504 S.W.2d 897, 900 (Tex. Crim. App.); Markle, "The Law of Arrest and Search and Seizure," p. 171; Burnett, "Evaluation of Affidavits and Issuance of Search Warrants: A Practical Guide for Federal Magistrates," 64 J. Crim. L. & Crim. 270, 278–79.

---

[2] The practice of invalidating searches conducted pursuant to warrants issued on the basis of facts set out in an affiant's request for the warrant which are only loosely referred to in the affiant's statement of supporting facts is deeply rooted in the New England legal tradition. See, e.g., *Humes* v. *Taber,* 1 R.I. 464, 465–66, 470–71.

Finally, even if the sentence in the affidavit could be found to incorporate properly the description of the place to be searched contained in the affiants' complaining statement, the information on this point provided by the informant would still fall short of the degree of detail required to sustain a conclusion that it is equally trustworthy as information which formally satisfies the *Aguilar* test, inasmuch as there is no description whatever as to how the informant reached his conclusion that the contraband items were being concealed in the apartment in question. Even the affidavit which met the liberal standards of sufficiency allowed by the Supreme Court in *United States* v. *Harris* specified that the informant had personally observed the illicit materials actually being concealed in the premises for which the court determined there was probable cause to search. *United States* v. *Harris,* supra, 575; see also *State ex rel. Attorney General* v. *Alabama,* 237 So. 2d 640, 643 (Ala.).

It cannot be said that the Circuit Court judge in this case was presented with facts establishing that the informant observed contraband being concealed in the specific apartment for which the warrant was issued. *United States* v. *Suarez,* supra, 714–15; *United States* v. *Lassoff,* 147 F. Sup. 944, 948 (E.D. Ky.). To paraphrase a statement in an opinion from another court which had occasion to rule upon the sufficiency of an application for a search warrant, no matter how closely and how liberally the affidavit in this case is scrutinized, there is no "common sense" way, nor any other way, of importing into the informant's statement to the affiants a description of the apartment at 584 Berkshire Avenue as the premises where the contraband in question was being kept. *United*

*States ex rel. DeNegris* v. *Menser,* 247 F. Sup. 826, 832 (D. Conn.), aff'd, 360 F.2d 199 (2d Cir.). We cannot allow the need to approach affidavits with "common sense" to abrogate the constitutional requirement of a showing of a factual basis to support the claimed existence of probable cause to believe an element so significant as that contraband is indeed concealed in the very place to be searched. See *Spinelli* v. *United States,* supra, 415; *Camara* v. *Municipal Court of San Francisco,* 387 U.S. 523, 535, 87 S. Ct. 1727, 18 L. Ed. 2d 930; *Dumbra* v. *United States,* supra, 441; *Rugendorf* v. *United States,* supra, 533; *United States* v. *Poppitt,* 227 F. Sup. 73, 76 (D. Del.); *United States* v. *Innelli,* 286 F. 731, 733 (E.D. Pa.); *Jones* v. *United States,* supra, 271.

I would reverse.